UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SEVILLE McCLENDON, : | | |
| Plaintiff, : | | No. 3:21-cv-3 (KAD) |
| : | | |
| v. : | | |
| : | | |
| CASEY, et al., : | | |
| Defendants. : | | |
| : | | |

**INITIAL REVIEW ORDER**

Plaintiff, Seville McClendon ("McClendon"), currently confined at Osborn Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983.[1] McClendon names four defendants: Correctional Officer Casey, Lieutenant Goldman, Bridgeport Correctional Center Dr. John Doe, and Bridgeport Correctional Center Warden Jane Doe. McClendon asserts Eighth Amendment claims for assault, deliberate indifference to medical needs, and denial of due process as well as a state law claim for medical malpractice. He seeks damages, a written apology, and prosecution of the defendants. The complaint was received on January 4, 2021. McClendon's motion to proceed *in forma pauperis* was granted on January 12, 2021.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review

---

[1] McClendon indicates in the Complaint that he brings this action against federal employees under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). However, as all defendants are state employees working at a state correctional facility, the court considers the Complaint filed pursuant to 42 U.S.C. § 1983.

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On October 26, 2020, McClendon was transported from St. Francis Hospital to Bridgeport Correctional Center ("BCC") without the "sliding board" the doctor had ordered. Doc. No. 1 ¶ 1.  McClendon fell out of his wheelchair in the van and rode for 1½ hours on the floor in pain.  *Id.*  Upon his arrival at BCC, McClendon was again moved without the sliding board causing the persons carrying him to drop McClendon causing an injury to his upper rear thigh.  *Id.*  McClendon was placed in a cell across from three inmates who had COVID-19.  *Id.*  He was not given a mask, his catheter, medical supplies, or his wheelchair and the cell had no emergency call button.  *Id.*  McClendon was left there in pain and forced to urinate and defecate on himself.  *Id.*  McClendon does not allege that any defendant was involved in his transport or

cell placement.

On October 27, 2020, McClendon explained what had happened to the doctor and requested an "x-ray MRI" because he was experiencing pain from something poking out of his leg. *Id.* ¶ 2. McClendon also requested a mask. *Id.* The doctor refused to look at McClendon's injuries, did nothing for his pain, gave McClendon medical paperwork for another inmate, and left. *Id.* Later that day, while McClendon was speaking to a mental health worker, a nurse stuck him with a needle and left him bleeding. *Id.*

On October 28, 2020, McClendon was going to try to self-catheterize. *Id.* ¶ 3. The medical staff had placed McClendon's medical supplies out of reach, knowing that he had two broken ankles. *Id.* McClendon fell off a make-shift bed that did not have a "ground rail for support." *Id.* A lieutenant saw him fall but just walked away. *Id.* When another inmate began screaming that McClendon was on the floor, Lieutenant Goldman called a code white. *Id.* The doctor refused to see him, and nothing was done to address McClendon's injuries or pain. *Id.*

On October 29, 2020, McClendon was on the phone with his sister reporting a PREA violation because the PREA line was not working. *Id.* ¶ 4. Officer Casey overheard the conversation. *Id.* She attacked McClendon and terminated his phone call. *Id.* Officer Casey then attacked McClendon a second time, pushing his wheelchair hard and causing him to fall out. *Id.* The fall caused McClendon's cast to push through his foot causing a hole which became infected. *Id.* McClendon alleges that he heard his leg "pop open" when he hit the ground. *Id.*

A code white was called. *Id.* The doctor looked McClendon in the face and walked away without providing any treatment even though McClendon was screaming that his leg was going numb. *Id.*

Lieutenant Goldman also responded to the code. *Id.* McClendon told Lieutenant Goldman that he wanted to report the assault to the state police and asked him to view surveillance footage. *Id.* After doing so, Lieutenant Goldman brought an incident report to McClendon's cell for him to complete. *Id.* Lieutenant Goldman told McClendon that he would call the state police but did not do so. *Id.* McClendon submitted several requests to the warden, captains, and deputy warden describing the attack and asking to speak to the state police but received no responses. *Id.*

On October 30, 2020, McClendon returned the incident report papers to Lieutenant Goldman so he could call the state police. *Id.* ¶ 4 (the second paragraph 4). McClendon believes Lieutenant Goldman threw the papers away and never called the state police. *Id.*

The same day, McClendon showed the doctor that blood was leaking through his cast and that his foot was red and possibly infected. *Id.* The doctor told McClendon that he would provide no treatment because he had spoken to Officer Casey and believed her version of events. *Id.* McClendon responded that the incident was on the surveillance tape and said he was experiencing numbness from his foot to his genitals. *Id.* McClendon alleges that the doctor put his penis in McClendon's face, said that one less black man in the world was alright with him, and left the facility. *Id.* For the next five days, McClendon was left in a cell with no emergency call button and no medical attention. *Id.*

On November 3, 2020, McClendon was transferred to Osborn Correctional Institution without speaking to the state police or receiving responses to his request or grievance. *Id.* ¶ 5. On November 11, 2020, McClendon returned to St. Francis Hospital to have his cast removed. *Id.* ¶ 6. The doctor commented on the hole in McClendon's foot noting that it was infected. *Id.*

The doctor scheduled McClendon for an emergency follow-up appointment in one week. *Id.*

**Discussion**

McClendon asserts the following federal claims: Officer Casey used excessive force against him and denied him due process by terminating his phone call while he was reporting a PREA violation; Lieutenant Goldman was deliberately indifferent to his safety by permitting Officer Casey to remain on duty where she could verbally harass him and violated his right to due process by not calling the state police; Dr. Doe sexually harassed him and was deliberately indifferent to serious medical needs; and Warden Doe was deliberately indifferent by transferring him and not responding to his grievance. McClendon also asserts a state law claim for medical malpractice against Dr. Doe. The court includes no substantive review of these claims because it is manifest that McClendon has not exhausted his administrative remedies.

All inmates are required to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") The exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle,* 534 U.S. 516, 524, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means

5

using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits) . . . [and] demands compliance with agency deadlines and other critical procedural rules"). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). A court may, however, dismiss a complaint for failure to state a claim where the allegations on the face of the complaint establish that it is subject to dismissal, even on the basis of an affirmative defense. *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (citing *Jones,* 549 U.S. at 215).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf. The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through

6

(I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). Thus, claims related to use of excessive force. deliberate indifference, sexual harassment, and denial of due process brought against custodial staff are subject to the Inmate Grievance Procedure set forth in Administrative Directive 9.6(6).

Under those procedures, an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within 65 days from the date

the Level 1 grievance was filed by the inmate.  *See id.* at 9.6(M).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator.  *See id.* at 9.6(6)(K).  The District Administrator is required to respond to the Level 2 appeal within thirty business of receipt of the appeal.  *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator.  *See id.* at 9.6(6)(L).  A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal.  *See id.*  A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal.  *See id.* at 9.6(6)(M).  A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee*. See id.* at 9.6(6)(L).

Medical issues are exhausted by filing a Health Services Review ("HSR") as provided in Directive 8.9.  *See* Administrative Directive 8.9, available at http://portal.ct.gov/DOC/AD/AD-Chapter-8.  There are two types of Health Services Reviews.  The first seeks review of an administrative issue, *i.e.*, a particular practice, procedure, administrative provision or policy, or it may allege improper conduct by a health services provider.  The second seeks review of a diagnosis or treatment, including a decision to delay treatment or even deny treatment after examination.  *See id.* at 8.9(9).  McClendon's claim that Dr. Doe refused to even examine him would constitute improper conduct under the first category.

Prior to filing an HSR, the inmate must seek an informal resolution of his claim by discussing the claim, face to face, with the appropriate staff member or by submitting a written

8

report to a supervisor.  Staff shall respond to the inmate within fifteen days of the receipt of a written request.  *See id.* at 8.9(10).

An inmate filing the first type of HSR must designate the "All Other Health Care Issues" box on the form and provide a concise statement of what he believes to be wrong and how he has been affected. *Id.* at 8.9(12). The HSR Coordinator evaluates, investigates, and decides each review within thirty days. Each review must be rejected, denied, compromised, upheld or withdrawn. *See id.* at 8.9(12)(A). If the inmate is dissatisfied with the response, he may appeal the decision within ten business days. *See id.* at 8.9(12)(B). HSR appeals are decided by the designated facility health services director or his designee within fifteen business days after receiving the appeal.

McClendon concedes that he did not exhaust his administrative remedies. He alleges however that his transfer to Osborn on November 3, 2020 prevented him from exhausting his administrative remedies.  The Directives, however, do not require that the exhaustion process be completed at the facility at which the grievance arose. Nor do they preclude exhaustion from being completed while at a different facility to which the inmate may have been transferred. Thus, the allegations themselves reveal that McClendon did not complete the exhaustion process by appealing the failure to respond to his grievances or that he even attempted to pursue his administrative remedies on his other claims for relief.

Moreover, the passage of time alone reveals that McClendon did not, because he could not have, exhausted his remedies under A.D. 9.6(6). McClendon signed his Complaint on December 8, 2020.  The incidents underlying his claims occurred between October 27, 2020 and November 3, 2020.  The Complaint was signed, at most, 42 days after the incidents.  As the

9

Directives afford correctional officials thirty business days to respond to a grievance and a grievance appeal, McClendon did not have sufficient time to exhaust his administrative remedies even if he had timely begun the exhaustion process on his claims.

**Orders**

The Complaint is **DISMISSED without prejudice** for failure to exhaust administrative remedies. The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of January 2021.

/s/
Kari A. Dooley
United States District Judge